UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONYA E. BOSTIC,

               Plaintiff,

v.

MICHAEL ANDREWS &
ASSOCIATES, LLC,

               Defendant.

Case No. 21-cv-10419

Paul D. Borman
United States District Judge

Elizabeth A. Stafford
United States Magistrate Judge

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (ECF No. 11)

This case arises out of Defendant Michael Andrews & Associates, LLC's attempts to collect a debt from Plaintiff Tonya Bostic. Now before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, which alleges that Defendant violated 15 U.S.C. §§ 1692d, 1692f, and 1692g(b) of the Fair Debt Collection Practices Act ("FDCPA"). The Court finds that the briefing adequately addresses the issues in contention and dispenses with a hearing pursuant to E.D. Mich. L. R. 7.1(f)(2).

## I. PROCEDURAL HISTORY

### A. Amended Complaint

On March 3, 2021, Plaintiff filed her First Amended Class Action Complaint. (ECF No. 8, First Amended Complaint). In it, she alleged that:

In July of 2016, she obtained a "vehicle loan" from First Investors Financial Services. (PageID 24). In 2019, she could not keep up with the payments due on that loan, and she "voluntarily surrendered the vehicle to First Investors." (PageID 24). After the vehicle was liquidated, an alleged deficiency balance of $5,239.52 (the "subject debt") remained, and First Investors sold or assigned this subject debt to Autovest, LLC. (PageID 24).

On August 5, 2020, Autovest sent Plaintiff a dunning letter that alleged that she owed them the subject debt and advised her of her dispute rights under the FDCPA, 15 U.S.C. § 1692g. (PageID 25). This was Autovest's first communication with Plaintiff. (PageID 25). "Shortly" after sending this letter, Autovest placed the subject debt with Defendant, a debt collector, for collection. (PageID 25).

On August 24, 2020, Plaintiff sent a letter to Autovest "(1) disputing the subject debt; (2) requesting validation of the subject debt[;] and (3) requesting that Autovest cease any credit reporting until the subject debt [was] validated." (PageID 25). Autovest did not respond to this letter. (PageID 25). However, "[u]pon information and belief, Autovest forwarded Plaintiff's dispute letter to Defendant." (PageID 25).

Defendant "attempted to collect the subject debt by placing collection calls to Plaintiff's cellular phone." (PageID 25). On one answered call, Plaintiff told Defendant that "she disputed the subject debt with Autovest" and "requested that the

collection calls cease." (PageID 25). However, Defendant's representative replied that "Defendant was allowed to continue its collection efforts until the subject debt was paid." (PageID 25). Thereafter, Defendant continued calling Plaintiff. (PageID 25).

On January 8, 2021, "in an effort to further harass Plaintiff and to compel payment on the subject debt, Defendant accessed Plaintiff's Experian credit report through a 'hard inquiry.'" (PageID 25). This type of inquiry "adversely impacted" Plaintiff's credit score and "will remain on [her] Experian credit report until February 2023." (PageID 26). Although Defendant "could have easily accessed Plaintiff's credit report through a 'soft inquiry,' which does not adversely impact a consumer's credit score," Defendant chose to conduct a "hard inquiry" "for the sole purpose of compelling payment on the subject debt as [the] 'hard inquiry' had the natural consequence of leading Plaintiff to believe that Defendant w[ould] continue harming Plaintiff's credit score by conducting 'hard inquiries' until the debt [was] paid." (PageID 26).

After presenting these factual allegations, Plaintiff asserted three claims for relief. On Counts I and II, brought on behalf of Plaintiff and members of a putative class, Plaintiff claimed that Defendant violated 15 U.S.C. §§ 1692d and 1692f by "(1) repeatedly placing collection calls to Plaintiff after Plaintiff requested that the calls cease; and (2) conducting a 'hard inquiry' on Plaintiff's Experian credit report

3

in an effort to compel payment on the subject debt." (PageID 29–31). On Count III,

brought on behalf of Plaintiff individually, Plaintiff claimed that Defendant violated

15 U.S.C. § 1692g(b) by "continuing its efforts to collect the subject debt *after*

Plaintiff requested validation of the subject debt"—in the letter that Plaintiff sent to

Autovest, and that Autovest forwarded to Defendant—"and *before* the subject debt

was validated." (PageID 32) (emphasis original).

### B. Motion to Dismiss

On April 27, 2021, Defendant filed a Motion to Dismiss the First Amended

Complaint. (ECF No. 11). On June 14, Plaintiff filed a Response, (ECF No. 17), and

on June 29, Defendant filed a Reply to Plaintiff's Response, (ECF No. 18).


## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where

the complaint fails to state a claim upon which relief can be granted. When reviewing

a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the

light most favorable to the plaintiff, accept its allegations as true, and draw all

reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695

F.3d 531, 538 (6th Cir. 2012). To state a claim, a complaint must provide a "short

and plain statement of the claim showing that the pleader is entitled to relief." Fed.

R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but

4

should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal citations and quotation marks omitted). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56. The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims, (2) matters of which a court may take judicial notice, (3) documents that are a matter of public record, and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6).

5

If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings. . . . [C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.").

## III.   ANALYSIS

"Congress enacted the FDCPA to eliminate 'the use of abusive, deceptive, and unfair debt collection practices by many debt collectors.' 15 U.S.C. § 1692(a). The statute is very broad, and was intended to remedy what is considered to be a widespread problem." *Harvey v. Great Seneca Financial Corp.*, 453 F.3d 324, 329 (6th Cir. 2006) (internal citations and quotation marks omitted). "In determining whether any particular conduct violates the FDCPA, the courts have used an objective test based on the least sophisticated consumer." *Id.* Under this test, "all recipients of debt-related communications are protected, whether they are gullible or shrewd, while debt collectors are protected from liability from bizarre or idiosyncratic interpretations." *Boozer v. Enhanced Recovery Co.*, 2019 WL 5295730, at *10 (E.D. Mich. Oct. 18, 2019) (internal citations and quotation marks omitted).

## A. The Court grants Defendant's Motion to Dismiss Plaintiff's § 1692d claim.

**Legal Standard**

15 U.S.C. § 1692d prohibits "[a] debt collector [from] engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." While "the question of whether conduct harasses, oppresses, or abuses will ordinarily be a question for the jury, . . . . [c]ourts have . . . dismissed claims filed pursuant to § 1692d as a matter of law if the facts alleged do not have the natural consequence of harassing or abusing a debtor." *Harvey*, 453 F.3d at 330 (internal citations, alterations, and quotation marks omitted).

"Without limiting the general application of the foregoing," § 1692d also lists examples of violative conduct, all of which "concern tactics intended to embarrass, upset, or frighten a debtor." *Harvey*, 453 F.3d at 330. Relevant here, § 1692d(5) proscribes "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."

There is little Sixth Circuit case law on the issue of whether a debt collector's phone calls violate the FDCPA, and most of the pertinent cases from the Eastern District of Michigan were decided at the summary judgment stage. These Eastern District cases have explained that this Court will "analyze the volume of calls along

7

with the pattern in which they were made and whether or not they were accompanied by oppressive conduct." *Boozer*, 2019 WL 5295730, at *9 (internal citations and quotation marks omitted). A "large volume of calls" from the debt collector to the debtor does not, alone, establish a violation of § 1692d. *Id.* (finding on summary judgment that "eight to fifteen calls over two months, without more, do not amount [to] conduct the natural consequence of which is to harass, oppress, or abuse"); *see also Lashbrook v. Portfolio Recovery Assocs.*, 2013 WL 4604281, at *6 (E.D. Mich. Aug. 29, 2013) (stating in a summary judgment decision that "placing a few calls to a debtor per day that go unanswered in an attempt to reach the debtor is likely not harassment under § 1692d"); *Millsap v. CCB Credit Servs., Inc.*, 2008 WL 8511691, at *7 (E.D. Mich. Sept. 30, 2008) (stating in a summary judgment decision that "a debt collector does not necessarily engage in harassment by placing one or two unanswered calls a day in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct such as threatening messages"). *But see McGee v. Michael Andrews & Assocs.*, 2019 WL 2539344, at *2 (E.D. Mich. June 20, 2019) ("Plaintiff's pleadings allege that the caller was rude, demeaning, and knew that Plaintiff lacked the funds to pay her debt. These facts plausibly support an inference of an intent to annoy, abuse, or harass.").

Additionally, because "[a]*ny* attempt to collect a defaulted debt will be unwanted by a debtor," *Harvey*, 453 F.3d at 330 (emphasis original), debt collectors

8

may legally continue to call debtors who have asked them to stop calling. *Lashbrook*, 2013 WL 4604281, at *7 (finding that a debt collector did not violate § 1692d by "wait[ing] twelve days, and then plac[ing] its last two calls" to the debtor, after the debtor told the collector on the phone that she "'knew nothing' about the debt and . . . no longer wanted to be contacted"); *Saltzman v. I.C. System, Inc.*, 2009 WL 3190359, at *8 (E.D. Mich. Sept. 30, 2009) (noting, while granting a defendant's motion for summary judgment, that "[a]lthough Plaintiff alleges that she requested Defendant to stop calling her, she did not send Defendant a cease and desist letter, dispute the amount owed, or produce evidence that Defendant has acted in a manner that would be actionable as harassment, oppression or abuse").[1] However, the Court has found that "an *immediate* callback after the debtor has hung up or has indicated his or her unwillingness to speak to the debt collector may constitute improper

---

[1] Some other districts, including the Eastern District of Pennsylvania, appear to construe the FDCPA more liberally. In *Carr*, that court relayed that "[c]ourts have found that a high volume of calls alone may be sufficient to state a plausible claim that a debt collector engaged in harassing conduct" and emphasized that the cases cited by the defendant "holding that the plaintiffs failed to make out claims under the FDCPA where the defendant collection agencies made many more calls . . . than in the present case" were almost all decided at the summary judgment stage. *Carr v. NCO Financial Sys.*, 2011 WL 6371899, at *2 (E.D. Pa. Dec. 20, 2011); *see also Shand-Pistilli v. Professional Account Servs.*, 2010 WL 2978029, at *5 (E.D. Pa. July 26, 2010) ("Plaintiff alleges 'continuous calls' to her home from a telephone number owned by defendant. Plaintiff asserts further that she asked defendant to stop contacting her but defendant refused to do so. The law is clear that under such circumstances I may infer that the calls were made with the intent to harass or annoy." (internal citations omitted)).

9

harassment." *Millsap*, 2008 WL 8511691, at *7 (emphasis added); *see also Lashbrook*, 2013 WL 4604281, at *6 ("calling and *speaking with* a debtor multiple times in one day likely does constitute harassment" (emphasis added)).

In *Grier*, this Court granted a motion to dismiss a § 1692d(5) claim. In that case, the complaint contained "a single, conclusory allegation: 'Between 2015 and approximately October 2017, [the defendant] repeatedly and continuously contacted [the] [p]laintiff by phone to harass her regarding the asserted debt.'" *Grier v. Mid-Michigan Credit Bureau*, 2019 WL 3812088, at *2 (E.D. Mich. Aug. 14, 2019). The Court found that this statement failed to state a claim because it "merely parrot[ed] the language of the statute" and lacked any factual allegations about "the frequency of the calls, the contents of the conversations, or in what ways these acts constitute[d] harassment." *Id.*

There is no Sixth Circuit or Eastern District of Michigan case law on whether conducting a "hard inquiry" violates the FDCPA. Defendant has identified the two cases from outside this circuit that address the issue: *Thiessen* and *Ramirez*, both of which granted motions to dismiss claims that a debt collector's single hard inquiry into a debtor's consumer report violated §§ 1692d and 1692f. In *Thiessen*, the Eastern District of Pennsylvania explained that the hard inquiry was "permissible lawful conduct" under the Fair Credit Reporting Act ("FCRA"), which does not distinguish between hard and soft inquiries. *Thiessen v. Blatt, Hasenmiller, Leibsker*

*& Moore, LLC,* 2015 WL 3643989, at *2–3 (E.D. Pa. June 21, 2015). For that reason, and because the plaintiff could not "prove any malicious intent on behalf of the defendant," the court dismissed the complaint. *Id.* at 3. Similarly, in *Ramirez*, the Northern District of Illinois, citing *Thiessen*, found that the natural consequences of the single hard inquiry did "not rise to the level of harassment" because the plaintiff had not alleged that the defendant had "deploy[ed] the fact of . . . the hard inquiry in an attempt to collect a debt" and the plaintiff for some time "did not even know that the hard inquiry had happened." *Ramirez v. Mandarich Law Grp.*, 2019 WL 1426015, at *3–4 (N.D. Ill. Mar. 29, 2019); *see also Ramirez v. Mandarich Law Grp.*, 2020 WL 1482366, at *2–3 (N.D. Ill. Mar. 25, 2020) (dismissing the plaintiff's Amended Complaint).

**Arguments**

Defendant argues that "the allegations do not support a finding that either the pattern or volume of calls suggests intent to harass or annoy." (ECF No. 11, Motion to Dismiss, PageID 43). It explains that Plaintiff "does not contend that the calls were made 'at a time and place known to be inconvenient,'" (PageID 43), and that the FDCPA "does not recognize a cause of action based on an oral request to cease calling," (PageID 44).

Next, Defendant notes that the FCRA "does not draw distinctions between 'hard' and 'soft' inquiries'" and "there is no limitation on the type of report a debt collector

11

... can pull." (PageID 45) (citing 15 U.S.C. § 1681a(d)(1) and *Thiessen*, 2015 WL 3643989). Defendant observes that "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." (PageID 45–46) (citing *Grden v. Leiken Ingber & Winters*, 643 F.3d 169, 173 (6th Cir. 2011)). Here, Defendant reasons, it did not "even t[ell] [Plaintiff] that it would run a credit check," and thus its purpose could not have been to induce her to pay her debt. (PageID 46) (citing *Ramirez*, 2020 WL 1482366).

In response, Plaintiff emphasizes that she has alleged "that Defendant violated §1692d of the FDCPA by *repeatedly* placing collection calls to Plaintiff (1) after Defendant had knowledge that Plaintiff disputed the debt and sought verification of the same; and (2) after Plaintiff requested that the calls cease. (ECF No. 17, Response to Motion to Dismiss, PageID 84) (emphasis original) (citing, among other cases, *McGee*, 2019 U.S. Dist. LEXIS 102914, at *5–6). She notes that "the failure to request that a debt collector's communication cease in writing only forecloses a claim under § 1692c(c)," and cites *Finney v. MIG Capital Mgmt.*, 2014 U.S. Dist. LEXIS 40685, at *36 (S.D. W. Va. 2014), as "finding that a debt collector's failure to stop calling after a consumer requests the same is relevant to a harassment claim under §1692d(5)." (PageID 86). Additionally, Plaintiff points out that the "litany of cases" that Defendant cites "to support its position that Plaintiff's allegations of

12

unwanted phone calls are insufficient to sustain a § 1692d claim at the pleading stage" were "*all* decided at the summary judgment stage." (PageID 87) (emphasis original).

Plaintiff then argues that the "hard inquiry" bolsters her claim, because she alleged that Defendant could have conducted a "soft inquiry," but instead chose a "hard inquiry" for the purpose of compelling payment on the subject debt. (PageID 88–89). She relates that *Ramirez* found that "just because a hard inquiry is permissible under the FCRA does not mean it cannot violate the FDCPA." (PageID 90). She also distinguishes *Ramirez* and *Thiessen* by noting that they considered "hard inquiries" *in isolation.* (PageID 90–91).

Defendant replies that "[t]he FDCPA proscribes specific conduct and the caselaw applying the statute recognizes that *all* debt collection can be 'unwanted by a debtor' but not all unwanted debt collection efforts violate the FDCPA." (ECF No. 18, Reply to Response to Motion to Dismiss, PageID 94) (citing *Harvey*, 453 F.3d at 330–31). It contends that "whether the calls are 'harassing' under the FDCPA is a legal conclusion the Court cannot accept as true" on Plaintiff's Amended Complaint, which alleges "no facts . . . that support an inference that the calls were harassing." (PageID 97–98). Defendant also argues that Plaintiff "does not answer the argument that the credit inquiry was not a 'communication' under the FDCPA" and "does not even suggest that the calls," which she claims distinguish her case

13

from *Ramirez* and *Thiessen*, "were related in any way to the 'hard inquiry.'" (PageID 96–97). It concludes, "[t]he FDCPA does not recognize a cause of action based on lawful activity the debtor finds offensive." (PageID 97).

**Analysis**

The Court dismisses this claim. Plaintiff's phone-call allegations are mostly conclusory and vague, much like the allegation in *Grier*, 2019 WL 3812088, at *2. She does not address what was said on all but one of the calls, nor does she specify their frequency, besides twice stating that Defendant called "repeatedly" (ECF No. 8, PageID 29, 31)—a characterization that merely "parrots" the statute. Additionally, Plaintiff makes no allegation that Defendant used rude or threatening language. *Cf. McGee*, 2019 WL 2539344, at *2 (denying a motion to dismiss a § 1692d claim where the plaintiff had alleged that the defendant was "rude" and "demeaning" over the phone).

Plaintiff's elaboration on one call presents her strongest argument for denying dismissal. On that call, according to the Amended Complaint, she "advised Defendant that she disputed the subject debt with Autovest and requested that the collection calls cease." (ECF No. 8, PageID 25). This allegation distinguishes Plaintiff's case from *Saltzman*, 2009 WL 3190359, at *8, where this Court granted summary judgment for a defendant who had not heeded the plaintiff's request to stop calling her, but only after the Court noted that the plaintiff had not "sen[t] Defendant

14

a cease and desist letter, [*nor*] *dispute*[*d*] *the amount owed.*" (emphasis added). Thus, Plaintiff contends that the calls Defendant placed after it was informed that the debt was disputed were harassment. (ECF No. 17, PageID 84).

But this Court finds otherwise. *Harvey*, 453 F.3d at 330, clearly established that calls are not harassing merely because they are unwelcome, and *Lashbrook*, 2013 WL 4604281, at *7, ended in summary judgment for a defendant who continued to call the plaintiff after she had told it not only to stop, but also that she "'knew nothing' about the debt," which implies a dispute. In the instant case, although Plaintiff alleges that "Defendant's representative advised [her] that [it] was allowed to continue its collection efforts until the subject debt was paid," (ECF No. 8, PageID 25), she does not allege that Defendant called her back *immediately*, or even *soon* after she asked it to stop.

Plaintiff's hard inquiry allegation fails to appreciably strengthen her case. Both district courts that have considered the issue have found that a single hard inquiry alone does not support a § 1692d claim. *See Thiessen,* 2015 WL 3643989, at *2–3; *Ramirez*, 2019 WL 1426015, at *3–4. And Plaintiff's allegation that Defendant used the hard inquiry "for the sole purpose of compelling payment on the subject debt," (ECF No. 8, PageID 26), is speculative. She does not offer any support for her assertion that Defendant's hard inquiry "had the natural consequence of leading [her] to believe that Defendant w[ould] continue harming [her] credit score by conducting

15

'hard inquiries' until the debt [was] paid," (ECF No. 8, PageID 26). Tellingly, she does not allege that Defendant ever performed a second hard inquiry or even mentioned the first one to her.

Finally, Plaintiff argues that the *combination* of the phone calls and the hard inquiry separates her Complaint from those in *Thiessen* and *Ramirez*. But nothing connects Plaintiff's discrete allegations in a way that makes them stronger together than they are apart.

For these reasons, this claim is dismissed. While most of the case law in this area comes from the summary judgment stage, the *Boozer*, *Lashbrook*, *Millsap*, and *Saltzman* courts were never presented with motions to dismiss. And *Grier* demonstrates that FDCPA claims need not always proceed to discovery.

### B. The Court grants Defendant's Motion to Dismiss Plaintiff's § 1692f claim.

**Legal Standard**

15 U.S.C. § 1692f prohibits a debt collector from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." The Seventh Circuit has called this phrase "as vague as they come," *Beler v. Glatt, Hazenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 474 (7th Cir. 2007), and courts within the Sixth Circuit have not taken much time to define it. However, a Magistrate Judge on this Court has noted that "some courts have defined the phrase as referring to practices that are shockingly unjust or unfair, or affronting the sense of justice, decency, or

16

reasonableness." *Tucek v. Cadillac Accts. Receivable Mgmt., Inc.*, 2019 WL
8226444, at *16 (E.D. Mich. Oct. 3, 2019), *report and recommendation rejected as
moot by* 2020 WL 1249341 (Mar. 16, 2020) (internal citations and quotation marks
omitted) (qualifying that "this seemingly high bar is set by the perspective of the
least sophisticated consumer"). Additionally, this Court has dismissed § 1692f
claims that rest on the same facts as insufficient § 1692d claims. *See Saltzman*, 2009
WL 3190359, at *9 ("[S]pecific provisions of the FDCPA address the type of
conduct alleged in these paragraphs . . . . As more specific FDCPA claims lack
evidentiary support, Plaintiff's more generalized, and equally unsupported, § 1692f
claim must also fail."); *Lashbrook*, 2013 WL 4604281, at *9 ("[Plaintiff's] assertions
. . . lack any evidentiary support regarding *unfair* or *unconscionable* means and
rather just duplicate Plaintiff's other claims. Summary judgment is appropriate on
Plaintiff's § 1692f claim." (emphasis original)); *see also Shand-Pistilli*, 2010 WL
2978029, at *6 ("A complaint will be deemed deficient under [§ 1692f] if it 'does
not identify any misconduct beyond which plaintiffs assert violate other provisions
of the FDCPA.'" (quoting *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 667
(S.D.N.Y. 2006)).

Furthermore, in *Ramirez*, the Northern District of Illinois granted the
defendant's motion to dismiss a § 1692f claim based on an allegation that the
defendant had used a "hard inquiry"—despite the "standard practice across the

consumer debt collection industry" of using a "soft inquiry"—"in its attempts to collect the subject consumer debt from [the plaintiff]." *Ramirez*, 2019 WL 1426015, at *4; Complaint at 3–4, *Ramirez v. Mandarich Law Grp.*, No. 18-cv-03257 (N.D. Ill. May 7, 2018) (ECF No. 1). The court based its decision on the fact that the plaintiff had not alleged that the defendant had "do[ne] anything with the report," nor "communicated with [him] in any way," and therefore "ha[d] not alleged that [the defendant had] used the hard inquiry as 'a means to collect or attempt to collect a debt.'" *Ramirez*, 2019 WL 1426015, at *4; *see also Thiessen*, 2015 WL 3643989, at *3 (dismissing a § 1692f claim based on a hard inquiry because "[a] complaint will be deemed deficient under section 1692f if it does not identify any misconduct beyond that which plaintiffs assert violates other provisions of the FDCPA" (internal citations, alterations, and quotation marks omitted)).

**Arguments**

Defendant's Motion to Dismiss and Reply both address §§ 1692d and 1692f together, so the arguments listed above apply here too.

In her Response, Plaintiff argues that her "allegations that the harassing unwanted collection calls were unfair, which must be accepted as true at the pleading stage, are sufficient to state a claim under § 1692f," and that, "[a]t the very least, whether the conduct is unfair is a question of fact that cannot be decided at the pleading stage." (ECF No. 17, Response to Motion to Dismiss, PageID 88).

**Analysis**

The Court dismisses Plaintiff's § 1692f claim. Defendant's "repeated" phone calls naturally fall under § 1692d, which explicitly addresses phone calls. Plaintiff does not include any allegations that paint these calls as "unfair" or "unconscionable" rather than as harassing or oppressive. Therefore, the phone-call allegations should be analyzed under § 1692d, not § 1692f. *See Saltzman*, 2009 WL 3190359, at *9; *Lashbrook*, 2013 WL 4604281, at *9.

And Defendant's alleged "hard inquiry" was hardly unfair or unconscionable. To the contrary, the FCRA permits such an inquiry, and *Thiessen*, 2015 WL 3643989, at *3, and *Ramirez*, 2019 WL 1426015, at *4, found that it does not, alone, violate the FDCPA. Moreover, the hard inquiry explainer that Plaintiff cites in her Complaint assures consumers that "[w]hile inquiries often can play a part in assessing risk, they play a minor part [and] are only 10% of what makes up a FICO Score." myFICO, *Credit Checks: What Are Credit Inquiries and How Do They Affect Your FICO Score?*, https://www.myfico.com/credit-education/credit-reports/credit-checks-and-inquiries.[2]

---

[2] Additionally, the Court concludes that Plaintiff fails to *plausibly* allege that Defendant used the hard inquiry as a "means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Although Plaintiff speculates that Defendant made the hard inquiry "for the sole purpose of compelling payment on the subject debt as Defendant's 'hard inquiry' had the natural consequence of leading Plaintiff to believe that Defendant will continue harming Plaintiff's credit score by conducting 'hard inquiries' until the debt is paid," (ECF No. 8, Amended Complaint, PageID

19

**C. The Court grants Defendant's Motion to Dismiss Plaintiff's § 1692g(b) claim.**

**Legal Standard**

15 U.S.C. § 1692g(b) provides:

> *If the consumer notifies the debt collector in writing* within the thirty-day period described in subsection (a) *that the debt*, or any portion thereof, *is disputed*, or that the consumer requests the name and address of the original creditor, *the debt collector shall cease collection of the debt*, or any disputed portion thereof, until the debt collector obtains verification of the debt, or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

(emphasis added). Neither party cites, and the Court has not found, a case dealing with the exact issue presented here. However, two principles raised in the briefing help the Court reach its conclusion. First, the Supreme Court has mandated that "[i]n determining the meaning of a statutory provision, we look first to its language, giving the words used their ordinary meaning." *Artis v. District of Columbia*, 138 S.

---

26), she, like the plaintiff in *Ramirez*, does not allege that Defendant informed her of the inquiry, despite its "repeated" phone calls to her.

Ct. 594, 603 (2018) (internal citations and quotation marks omitted). Second, the

Seventh Circuit has held that:

> A distinction between creditors and debt collectors is fundamental to
> the FDCPA, which does not regulate creditors' activities at all. Courts
> do not impute to debt collectors other information that may be in
> creditors' files—for example, that debt has been paid or was bogus to
> start with. This is why debt collectors send out notices informing
> debtors of their entitlement to require verification and to contest claims.
> 15 U.S.C. § 1692g. Verification would be unnecessary if debt collectors
> were charged with the creditors' knowledge. . . . Knowledge may be
> imputed to *agents,* but debt collectors are independent contractors; an
> agent or employee of the creditor is not covered by the Act in the first
> place.

*Randolph v. IMBS, Inc.,* 368 F.3d 726, 729 (7th Cir. 2004) (emphasis
original).

**Arguments**

Defendant asserts that "§1962g clearly states that, when a debtor notifies a

*debt collector* in writing that the creditor disputes a debt, the *debt collector* must

cease collection efforts until the debt is validated." (ECF No. 11, Motion to Dismiss,

PageID 47) (emphasis original). Therefore, it concludes, Plaintiff fails to state a

claim under "the plain reading of the statute," because she alleges only that she

notified in writing the creditor (Autovest), not the debt collector (Defendant).

(PageID 47).

Plaintiff's Response claims that "under the FDCPA, knowledge may be

imputed to agents." (ECF No. 17, Response to Motion to Dismiss, PageID 91) (citing

*Randolph,* 368 F.3d at 729). She elaborates that "by alleging that Autovest placed

the debt for collection with Defendant, Plaintiff has plausibly alleged an agency relationship between Autovest and Defendant" and therefore "Autovest's knowledge that Plaintiff disputed the debt may be imputed to Defendant, thus prohibiting it from collecting the debt until it provided verification of the same." (PageID 91). She also emphasizes that she alleged that Autovest notified Defendant of her dispute letter, and that she told the Defendant on a call about her dispute of the debt. (PageID 92).

Defendant's Reply clarifies that "'[c]ourts do not impute to debt collectors other information that may be in creditors files.'" (ECF No. 18, Reply to Response to Motion to Dismiss, PageID 95) (citing *Randolph*, 368 F.3d at 729).

**Analysis**

Pursuant to the plain meaning of § 1692g(b), the Court dismisses this claim. Black's Law Dictionary defines "to notify" as "1. To inform (a person or group) in writing or by any method that is understood . . . . 2. To give notice of; to make known . . . ." *Notify*, Black's Law dictionary (11th ed. 2019).[3] The Complaint alleges that Plaintiff sent her dispute letter to *Autovest*, the creditor; it does not allege that she

---

[3] Plaintiff does not appear to dispute the inference that "notifying" someone of something means *directly* informing them of that thing. She does not argue that she *indirectly* "notified" Defendant by sending a letter that did (allegedly) eventually reach Defendant.

informed nor gave notice of her dispute *in writing* to *Defendant*, the debt collector. Therefore, she did not trigger the protections of § 1692g(b).

Plaintiff's arguments cannot circumvent this straightforward written notification requirement. As *Randolph*, 368 F.3d at 729, explains, § 1692g(b) gives debtors the opportunity to notify debt collectors of disputes with their creditors precisely because debt collectors are not presumed to already know about those disputes. Thus, Defendant cannot automatically be charged with receipt of a letter that Plaintiff sent to Autovest. And the Court should not allow Plaintiff to bridge this separation by simply asserting that "[u]pon information and belief, Autovest forwarded Plaintiff's dispute letter to Defendant." (ECF No. 8, Amended Complaint, PageID 25). This would allow future plaintiffs an all-too-easy way to avoid the consequences of ignoring § 1692g(b)'s explicit instructions. Additionally, the fact that Plaintiff informed Defendant of the dispute over the phone is inapposite because the statute requires notice to be in writing.

### D. The Court denies Plaintiff leave to amend her Complaint and dismisses this case with prejudice.

**Legal Standard**

"Although Federal Rule of Civil Procedure 15(a)(2) provides that a court 'should freely give leave [to amend a complaint] when justice so requires,' the right to amend is not absolute or automatic." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 551 (6th Cir. 2008) (alterations original) (internal citations and quotation marks

omitted). According to the Sixth Circuit, "'[t]he district court has discretion in determining whether to permit an amendment, and its decision will be overturned only if it has abused that discretion.'" *Id.* (quoting *Sinay v. Lamson & Sessions Co.*, 948 F.3d 1037, 1041 (6th Cir. 1991)); *see also Forman v. Davis*, 371 U.S. 178, 182 (1962) ("the grant or denial of an opportunity to amend is within the discretion of the District Court"). The Circuit has held that "'an amendment may not be allowed if the complaint as amended could not withstand a Fed. R. Civ. P. 12(b)(6) motion.'" *Islamic Ctr. of Nashville v. Tennessee*, 872 F.3d 377, 387 (6th Cir. 2017) (quoting *Sinay*, 948 F.2d at 1041–42); *see also O'Dell v. Hope Network W. Mich./Mich. Educ. Corps.*, 2021 WL 3861106, at \*10 (E.D. Mich. Aug. 30, 2021) (denying leave to amend in part because "any amendment would be futile").

The Sixth Circuit has also upheld denials of leave to amend where plaintiffs do not adequately request such leave. For example, in *Kuyat*, it held that a district court did not abuse its discretion by refusing to allow plaintiffs to amend their complaint "[b]oth because the plaintiffs did not present an adequate motion and because they did not attach a copy of their amended complaint." *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) (adding that a "request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend"); *see also Tucker*, 539 F.3d at 551 ("No abuse of discretion occurs when a district court

denies a party leave to amend where such leave was never sought."). As the Circuit has explained, plaintiffs are "not entitled to an advisory opinion from the court informing them of the deficiencies of the complaint, and then an opportunity to cure those deficiencies." *Begala v. PNC Bank, Ohio Nat. Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000).

The Court also notes that Plaintiff has already filed an Amended Complaint that was the operative pleading with regard to this Motion.

Finally, the Sixth Circuit has held that "'if a party does not file a motion to amend or a proposed amended complaint, it is not an abuse of discretion for the district court to dismiss the claims with prejudice.'" *Crosby v. Twitter, Inc.*, 921 F.3d 617, 627 (6th Cir. 2019) (quoting *CNH Am. LLC v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW)*, 645 F.3d 785, 795 (6th Cir. 2011)). In fact, the Circuit has noted, a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is "presumptively 'with prejudice.'" *Pratt v. Ventas, Inc.*, 365 F.3d 514, 523 (6th Cir. 2004); *see also Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485, 495 (6th Cir. 1990) ("The grant of a 12(b)(6) motion is an adjudication on the merits, unless the district court specifies the dismissal is without prejudice. The decision to dismiss with prejudice is a harsh sanction, but the choice lies within the discretionary power of the district court . . . ." (internal citations omitted)).

**Analysis**

The Court denies Plaintiff leave to amend her Complaint. She has already amended her Complaint once. And she did not file a Motion to Amend or a Proposed Amended Complaint. Her single assertion that "leave to amend should be granted," buried at the end of the "Legal Standard" section of her Response to Defendant's Motion to Dismiss, (ECF No. 17, PageID 82), is not an adequate request. *See Kuyat*, 747 F.3d at 444.

Pursuant to *Crosby*, 921 F.3d at 627, the Court will enter its dismissal with prejudice.

**CONCLUSION**

For the reasons stated above, the Court GRANTS Defendant's Motion to Dismiss and DENIES Plaintiff leave to amend her First Amended Complaint.

**IT IS SO ORDERED.**

Dated:   10-19-21

Paul D. Borman
United States District Judge